1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**NORTHERN DISTRICT OF CALIFORNIA**

7
8
9
10

**KIN WAH KUNG,**

**Plaintiff,**

11

**vs.**

12

**EDMUND G. BROWN, *et al.*,**

13
14

**Defendants.**

Case No.: **12-CV-00645 YGR**

**ORDER DISMISSING CASE WITH PREJUDICE**

15      California's Uniform Bail and Penalty Schedules ("UBPS") set the amount for traffic fines

16  levied in that state.  In this civil action, pro se plaintiff Kin Wah Kung seeks a declaration that the

17  UBPS violates Eighth Amendment's prohibition on excessive fines and bails, as well as a no-

18  enforcement injunction.  For the reasons set forth below, Mr. Kung's case is hereby **DISMISSED**

19  **WITH PREJUDICE** for lack of standing.

20      The Court briefly reviews the relevant factual and procedural history.  Mr. Kung brought

21  the instant lawsuit after receiving a citation for an alleged red light infraction pursuant to California

22  Vehicle Code § 21453(a).  Mr. Kung pleaded not guilty and posted bail in the amount of $446.  The

23  California Superior Court convicted him, and the amount of Mr. Kung's bail was applied to satisfy

24  the fine for the infraction.  Mr. Kung then appealed his conviction to the Superior Court's Appellate

25  Division and, ultimately, succeeded in having his conviction reversed.  (Dkt. No. 16 (Amended

26  Complaint) ¶¶ 9-15.)  The state refunded his $446.  (*Id.* ¶ 23.)  Mr. Kung, in short, won his case.

27      Nevertheless, Mr. Kung continued to seek appellate review.  He applied to every level of

28  the California court system, including the California Supreme Court, in no fewer than four petitions

1  or applications.  (*Id.* ¶¶ 16-22.)  After overturning Mr. Kung's original conviction, however, the

2  California appellate courts summarily denied his requests.  (*See id.*)  Mr. Kung avers that the

3  California courts have "failed to react" to his Eighth Amendment arguments, necessitating, in his

4  view, this federal lawsuit.  (*Id.* ¶ 24.)

5       On October 22, 2013, this Court ordered Mr. Kung to show cause why his case should not

6  be dismissed for lack of standing.  (Dkt. No. 38 ("OSC").)  The Court pointed out that, since the

7  state had refunded Mr. Kung's money, he appeared unable to satisfy the injury or redressability

8  requirements of Article III standing.  (*Id.* at 2 (citing *San Diego Cnty. Gun Rights Comm. v. Reno*,

9  98 F.3d 1121, 1126 (9th Cir. 1996).)  Further, the Court observed that, because Mr. Kung seeks

10  declaratory and injunctive relief only, he must demonstrate "a very significant possibility of future

11  harm," not merely past injury.  *San Diego Cnty. Gun Rights Comm.*, 98 F.3d at 1126.  The Court

12  advised Mr. Kung that he did not appear to have done so.  (OSC at 2.)  In deference to Mr. Kung's

13  pro se status, the Court gave Mr. Kung three weeks to file a written response to the OSC, and gave

14  the State one week to file a written reply.  (*Id.*)  The parties timely filed their briefs.  (Dkt. Nos. 39

15  ("Kung Response"), 40.)

16       Having carefully considered the parties' submissions and the applicable law, the Court

17  concludes that Mr. Kung lacks standing and that his amended complaint therefore must be

18  dismissed.  Mr. Kung's response to the OSC, though well-argued, does not remedy the standing

19  problems identified by the Court.  The Court need not address every point made in Mr. Kung's brief

20  because the issue of future harm alone is dispositive.  That is, even if the Court were to assume that

21  Mr. Kung satisfies all the other requirements for Article III standing, he still has not alleged facts

22  establishing a very significant possibility of future harm.

23       To make the required showing, it is not enough for Mr. Kung to allege "the mere existence

24  of a statute, which may or may not ever be applied to" him.  *Action Apartment Ass'n, Inc. v. Santa*

25  *Monica Rent Control Bd.*, 509 F.3d 1020, 1027-28 (9th Cir. 2007) (quoting *Stoianoff v. State of*

26  *Mont.*, 695 F.2d 1214, 1223 (9th Cir.1983) (brackets omitted)).  Neither is "[p]ast exposure to

27  harmful or illegal conduct" necessarily enough to "confer standing to seek injunctive relief if the

28  plaintiff does not continue to suffer adverse effects."  *Mayfield v. United States*, 599 F.3d 964, 970

1   (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).  "Nor does

2   speculation or 'subjective apprehension' about future harm support standing." *Id.*  "Once a plaintiff

3   has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or

4   immediate threat that he will again be wronged in a similar way.'" *Id.* (quoting *City of Los Angeles*

5   *v. Lyons*, 461 U.S. 95, 111 (1983) (ellipsis omitted)).  That is, Mr. Kung must show at least "a

6   genuine threat of imminent prosecution under the challenged statute to establish a justiciable case

7   or controversy." *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 688-89 (9th Cir. 1984)

8   (citing *Steffel v. Thompson*, 415 U.S. 452, 458-59 (1974)).  He is "not required to undergo

9   prosecution" to establish his standing, but his fear of future prosecution must rise above the merely

10  "imaginary or speculative." *Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir. 1986).  The key to

11  the inquiry is whether Mr. Kung can identify a specific, particular, and sufficiently imminent future

12  injury. *See Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873-74 (9th Cir. 1995).

13        Here, Mr. Kung argues that he suffers from a real possibility of future harm because he lives

14  in an area where Automatic Traffic Enforcement Systems ("ATES") are commonly used.  (Kung

15  Response at 5-6.)  Mr. Kung avers that he will "continue to suffer similar situations" due to the use

16  of ATES.  The Court judicially notices the fact, generally known in this District, that municipalities

17  sometimes use automated cameras to photograph vehicles as they pass through a particular

18  intersection, purportedly against a red signal, and issue traffic citations based on those photographs.

19  Fed. R. Evid. 201(b)(1).  ATES is apparently a system of this kind.  Mr. Kung represents that he

20  lives in the city of Fremont, which is adjacent to the cities of Union City and Newark, and that at

21  the time he was cited, all three cities used ATES (though Union City has, according to Mr. Kung,

22  discontinued its use).  Mr. Kung argues, in essence, that the use of ATES in his hometown and

23  neighboring cities, combined with the reasonable suspicion standard for traffic stops rooted in

24  *Terry v. Ohio*, 392 U.S. 1 (1968), makes it "reasonable to believe" that he will be subjected to

25  future traffic citations and thus to punishment under the Uniform Bail and Penalty Schedules.

26  (Kung Response at 6.)

27        That is not enough to establish Mr. Kung's standing to seek the declaratory and injunctive

28  relief he prays for here.  The presence of ATES near Mr. Kung's home does not subject him to any

particular or specific threat of being fined under the UBPS. Nothing in the record suggests Mr. Kung is any more likely to be cited through ATES than others passing through his community. Even viewing the record most favorably to Mr. Kung, he manifestly is situated like every other driver on the roads. His interest, therefore, is generalized, rather than specific and particular, and insufficient to show that Mr. Kung bears "a personal stake, as opposed to [a] diffuse, collective interest" in the litigation. *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1516-17 (9th Cir. 1992) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886-88 (1990); *Allen v. Wright*, 468 U.S. 737, 755 (1984)).

Further, the possibility that Mr. Kung may be required in the future to pay a fine or bail imposed under the UBPS is merely conjectural and hypothetical. Mr. Kung represents that at the time he received his initial traffic ticket, ATES was in use in his home city of Fremont, as well as two neighboring communities, though one of those has since ceased to use it. Mr. Kung suggests that ATES suffers from unidentified "defects," and imposes traffic citations without requiring officers to "prov[e] anything." (Kung Response at 6.) Even taking those representations as true, they do not add up to an "imminent" threat of prosecution. Simply living in an area where traffic tickets are given out does not place Mr. Kung at imminent risk of receiving one. Mr. Kung might receive a citation through ATES tomorrow, in a few years, or never again. Mr. Kung's risk of future injury is only speculative.

Because Mr. Kung has not shown a genuine, imminent threat of future injury, he has not established his standing to bring suit. Accordingly, pursuant to its OSC, the Court **DISMISSES** Mr. Kung's amended complaint. Further, the dismissal is **WITH PREJUDICE**. Mr. Kung requests leave to amend, but the Court perceives no set of plausible facts that would cure his standing defects. Granting leave to amend would therefore be futile, and the Court declines to do so.[1]

---

[1] The Court acknowledges Mr. Kung's argument based on statements made by Defendant Edmund G. "Jerry" Brown, the Governor of California, in the course of allowing California Assembly Bill 412 to become law without his signature. (Kung Response at 5; *id.* Ex. B.) In his comments, the Governor expressed concern about the use of "penalty assessments" to fund projects whose costs, in the Governor's view, "should not be borne by a narrow class of citizens," i.e., those who incur the penalty. Mr. Kung appears to regard the Governor's comments as justifying his efforts in this lawsuit, which would stop California from "execut[ing] laws that are clearly not in the interest of the public," which Kung identifies as a "future harm" supporting his standing. (Kung Response at

United States District Court
Northern District of California

This Order terminates Case No. 12-cv-0645.

IT IS SO ORDERED.

Date: November  26, 2013

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

United States District Court
Northern District of California

5.)  The Court appreciates the strength of Mr. Kung's views on the policy issue of proper traffic enforcement and penalties.  However, as a legal matter, his argument underscores the generalized nature of his interest in this litigation, which is, under the law, coextensive with that of the public at large.  As such, Mr. Kung's concerns are better addressed through California's legislative processes than by this Court.